# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARIF WILLIAMSON, | Civil No. 3:15-cv-1797 |
| Plaintiff | (Judge Mariani) |
| v. | |
| SUPERINTENDENT GARMAN, et al., | |
| Defendants | |

FILED SCRANTON
JUN 2 2 2017
PER _____ DEPUTY CLERK

## MEMORANDUM

Plaintiff Sharif Williamson ("Plaintiff"), an inmate currently confined at the Rockview State Correctional Institution, Bellefonte, Pennsylvania ("SCI-Rockview"), commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via a second amended complaint. (Doc. 35). Named as Defendants are the following employees of SCI-Rockview: Mark Garman, Superintendent; Nathan Lehman, Lieutenant; and Officers Clark, Leidhecker, Myers, Phillips, Tubbs, Weaver, and Intallura, (collectively, "Corrections Defendants"). (Id. at pp. 2-4).

Presently pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 36). Despite being directed to file a brief in opposition to Defendants' motion to dismiss (Doc. 32, ¶ 5), Plaintiff failed to respond to the motion and the time for responding has now passed.[1] In the absence of any timely

---

[1] Plaintiff was cautioned that failure to file a brief in opposition to Defendants' motion would result in the motion being deemed unopposed. (Doc. 32, ¶ 5, n. 1) (citing M.D. Pa. Local Rule 7.6 ("Any

response by Plaintiff, the motion is deemed ripe for resolution. For the reasons set forth below, the Court will grant the motion to dismiss.

I. **Standard of Review**

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

---

party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief .... Any party who fails to comply with this rule shall be deemed not to oppose such motion.") (emphasis added)).

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n. 14 (3d Cir. 2013) (internal citations and quotation marks omitted).

*Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment

would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## II. Allegations of the Second Amended Complaint[2]

Plaintiff alleges that, on June 8, 2015, he was transferred to the restricted housing unit ("RHU") at SCI-Rockview and subjected to a strip search. (Doc. 35, p. 3). Upon arrival to the RHU, Plaintiff alleges that Defendant Lehman directed eight officers to place him on the floor. (*Id.*). He claims that the officers cut off his clothes, placed their weight on his body, spread his buttocks apart, and visually inspected his body. (*Id.*). Plaintiff asserts that the search was conducted in an unprofessional and illegal manner, and belittled him. (*Id.* at p. 5).

Plaintiff alleges that Defendant Lehman did not comply with the Department of Corrections policy for strip searches as set forth in Department of Corrections Administrative Directive 203 ("DC-ADM 203")[3], by failing to ask Plaintiff to submit to the strip

---

[2] The allegations of the second amended complaint are strikingly similar to the allegations of the original complaint and the first amended complaint. *See* (Docs. 1, 28, 35).

[3] DC-ADM 203 provides, in pertinent part, as follows:

Every inmate is subject to search at any time. Staff personnel of either gender may conduct pat searches in any area of the facility. They will be conducted in a professional manner with tact and proper attitude displayed.
B.    Strip Search
1.    A strip search shall be conducted when necessary for the security and good order of the facility, including the following situations:
    g.  when an inmate enters or leaves any restricted area

4

search. (*Id.*).

Plaintiff further alleges that Defendant Garman is legally responsible for the operation of the prison. (*Id.*).

## III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the

---

2. A strip search should be conducted in an area separate from other inmates and to assure privacy and minimum embarrassment. Absent exigent circumstances, same gender correctional personnel shall search inmates.
3. Every inmate is required to comply with the following procedures when being strip searched:
   a. remove all items from pockets and place them in a hat, on a shelf, desk, or other suitable place;
   b. remove all articles of clothing;
   c. stand still with feet apart and arms extended outward, palms up; and
   d. follow the verbal direction given by searching staff member.

Commonwealth of Pennsylvania Department of Corrections, DC-ADM 203: Searches of Inmates and Cells (May 25, 2004), available at http://www.cor.pa.gov/.

violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Personal Involvement

Defendants seek to dismiss the second amended complaint against Defendant Garman based on Plaintiff's failure to allege the requisite personal involvement in unconstitutional conduct. (Doc. 37, pp. 4-5). Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08 (3d Cir. 1988); *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Contemporaneous, personal knowledge and acquiescence, not after the fact knowledge, is required. *See Rode*, 845 F.2d at 1207; *Evancho*, 423 F.3d 347. Significantly, allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at

1208.

> With respect to Defendant Garman, Plaintiff alleges the following:
>
> [H]e wouldn't let me get the defendant names and my welfare was game with when I write him about it he act like he didn't care and staff follow the policy! As Mr. Garman legally responsible of the operation that facility and his staffs didn't follow the criteria of DC-ADM 203.

(Doc. 35, p. 3, ¶ 14) (sic).

Plaintiff seeks to impose liability on Defendant Garman because he is legally responsible for the operation of the prison. However, he fails to set forth specific instances of constitutional misconduct, and he does not allege that Defendant Garman knew of, and acquiesced in, or played an affirmative part in the strip search of which he complains. Inasmuch as he attempts to impose liability based upon Defendant Garman's failure to take action on his written complaints, an inmate's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance or complaint, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *see also Croom v. Wagner*, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006); *Ramos v. Pennsylvania Dept. of Corrs.*, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006). Therefore, the second amended complaint against Defendant Garman will be dismissed.

### B. Strip Search

A prisoner's challenge to a strip search may be cognizable under 42 U.S.C. § 1983

through the Fourth or Eighth Amendments. *See Seymour/Jones v. Spratts*, 1990 U.S. Dist. LEXIS 193, *4 (E.D. Pa. 1990), citing *Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979). To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable. *See Payton v. Vaughn*, 798 F. Supp. 258, 261-62 (E.D. Pa. 1992). Where a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies. *See Jordan v. Cicchi*, 428 F. App'x 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction"); *Robinson v. Ricci*, 2012 U.S. Dist. LEXIS 44011, *50, n. 6 (D.N.J. 2012) (stating that, in addition to a possible Fourth Amendment violation, the "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner").

The Third Circuit Court of Appeals has held that prison officials may conduct visual body cavity searches whenever an inmate enters and exits his cell in the RHU, if performed in a reasonable manner. *See Millhouse v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010) (citing *Bell*, 441 U.S. at 559-60). "When a prisoner moves through restricted areas of a correctional facility, it is not unreasonable for staff to check for contraband via visual body cavity searches upon the prisoner's return." *Jones v. Luzerne County Corr. Facility*, 2010 U.S. Dist. LEXIS 86430, *22-23 (M.D. Pa. 2010) (citing *Millhouse*, 373 F. App'x 135).

Further, strip searches can be conducted by prison officials without probable cause. *Jones*, 2010 U.S. Dist. LEXIS 86430 at *22 ("[I]nmates do not have a right 'to be free from strip searches."), citing *Bell*, 441 U.S. at 558. Additionally, allegations that a strip search was degrading or embarrassing also fail to state a constitutional violation. *See Millhouse*, 373 F. App'x at 137 (body cavity strip "searches, even if embarrassing and humiliating, do not violate the constitution").

In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Hudson*, the absence of a serious injury to the inmate is relevant to this court's inquiry, but does not end it. *Id.* However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

Plaintiff's claim regarding the strip search was dismissed without prejudice by this Court's January 9, 2017 Memorandum and Order. *See* (Docs. 31, 32). However, Plaintiff was given a second opportunity to amend this claim. The Court specifically advised Plaintiff that his second amended complaint must allege the following:

9

> Any claims of personal involvement by Defendant Lehman showing his personal direction or actual knowledge and acquiescence in the strip search.
>
> Any allegations that the strip search was unnecessary and was conducted in an unconstitutional and illegal manner.
>
> Any actions the officers took that show the use of unnecessary force. Plaintiff must state specifically which officers placed their weight on him, and the manner in which they applied their weight.
>
> Any actions or statements made by the officers that reveal the officers derived sexual pleasure from the strip search. Plaintiff must state specifically which officers touched him, what body part was touched, and the manner in which the officers touched him.

(Doc. 32, ¶ 4).

In the second amended complaint, Plaintiff alleges that he was subjected to a strip search when he was transferred to the RHU that was degrading, conducted in an unprofessional manner, and contrary to prison policy. (Doc. 35, p. 3). He again alleges that Defendant Lehman supervised the strip search and failed to ask Plaintiff to comply with the strip search. (*Id.*). Plaintiff claims that unidentified corrections officers placed him on the ground, cut off his clothes, and an unidentified officer spread his buttocks exposing his anus to permit visual inspection of his body. (*Id.*).

In *Millhouse*, the Third Circuit Court of Appeals stated as follows:

> Millhouse alleges that prison officials routinely subjected him to strip searches when entering and exiting his cell in the SHU and that, during one search, a guard "focused on his chest and penis while other employees were present." The Supreme Court has held that prison officials may conduct visual body cavity searches in a reasonable manner . . . Assuming the truth of Millhouse's

allegations, the searches, even if embarrassing and humiliating, do not violate the constitution.

*Millhouse*, 373 F. App'x at 137 (citations omitted). Similarly, the Court finds that Plaintiff fails to allege facts from which it can be concluded that Defendants went beyond a reasonable strip search or used unnecessary force during the strip search. *See Davis v. City of Philadelphia*, 2013 WL 1187086 (E.D. Pa. March 22, 2013) (finding no cognizable constitutional claim where the inmate-plaintiff was only required to bend over, spread his buttocks and cough while officers performed a visual inspection for contraband); *Watson v. Beard*, 2013 WL 4648323, at * 11 (W.D. Pa. 2013) (finding that the "Plaintiff's allegation that his genitals were 'massaged' or 'squeezed' during what were otherwise normal, routine pat-down searches . . . [was] simply insufficient to establish an Eighth Amendment violation"). Despite the specific direction provided in the Court's January 9, 2017 Memorandum and Order, see (Docs. 31, 32), Plaintiff has failed to cure the deficiencies in the prior complaints. Plaintiff fails to specifically allege any actions the officers took that show the use of unnecessary force, fails to state which officers placed their weight on him, the manner in which they applied their weight, and which officers touched him.[4] Additionally, there is no allegation that Plaintiff suffered any actual injuries during the strip search.

---

[4] In the second amended complaint, Plaintiff does not set forth any actions or statements made by the officers that reveal the officers derived sexual pleasure from the strip search and, thus, appears to have abandoned this claim.

11

As to Defendant Lehman, Plaintiff alleges that Lehman never asked him to comply with the strip search, in violation of DC-ADM 203. However, DC-ADM 203 makes no indication that an officer is required to obtain compliance from the inmate prior to a strip search. DC-ADM 203 provides that "[e]very inmate is subject to search at any time," and "a strip search shall be conducted . . . when an inmate enters or leaves any restricted area." DC-ADM 203 § 2(B)(1)(g). Thus, the Court cannot conclude that Defendant Lehman violated DC-ADM 203 by allegedly failing to ask Plaintiff to comply with the strip search.

However, assuming *arguendo* that Defendant Lehman violated prison policy by failing to obtain Plaintiff's consent prior to the strip search, a one-time violation of an internal policy does not automatically rise to the level of a constitutional violation. "[A] prison policy manual does not have the force of law and does not rise to the level of a constitutional violation." *Atwell v. Lavan*, 557 F.Supp.2d 532, 556, n. 24 (M.D. Pa. 2008) (citing *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004)). The Third Circuit has clearly stated that "agency interpretive guidelines 'do not rise to the level of a regulation and do not have the effect of law.'" *Mercy Catholic Med. Ctr.*, 380 F.3d at 155 (citation omitted).

Although given the opportunity to amend his strip search claim with more specificity, Plaintiff failed to do so. The allegations in his second amended complaint mirror those set forth in his first amended complaint. Consequently, Plaintiff's strip search claim does not rise to the level of a cognizable constitutional violation under § 1983 and will be dismissed.

## IV. Leave to Amend

When a complaint fails to present a prima facie case of liability, courts should generally grant leave to amend before dismissing a complaint. See *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). This is Plaintiff's second amended complaint alleging that his constitutional rights were violated as a result of a strip search. To date, Plaintiff has been unable to adequately allege a cognizable constitutional claim. Allowing Plaintiff another opportunity to amend would be futile.

## V. Conclusion

Based on the foregoing, Defendants' motion (Doc. 36) to dismiss will be granted. A separate order shall issue.

Dated: June 22, 2017

Robert D. Mariani
United States District Judge